1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SHIRLEY A. GUTIERRIEZ,                    No.  2:19-cv-00359 CKD

12                 Plaintiff,

13         v.                                  ORDER

14   ANDREW SAUL, Commissioner of Social
     Security,
15
                   Defendant.
16

17

18         Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying an application for disability insurance benefits under Title II of the

20   Social Security Act ("Act").  The parties have consented to Magistrate Judge jurisdiction to

21   conduct all proceedings in the case, including the entry of final judgment.  For the reasons

22   discussed below, the court will grant plaintiff's motion for summary judgment and deny the

23   Commissioner's cross-motion for summary judgment.

24   BACKGROUND

25         On July 20, 2015, plaintiff, born in 1974, filed a Title II application for a period of

26   disability and disability insurance benefits, alleging disability beginning February 12, 2014.[1]

27   _____

28   [1] The ALJ noted that "[a] prior unfavorable Administrative Law Judge decision was issued on
     February 11, 2014.  The medical evidence shows that since that decision was issued, the claimant

                                              1

Administrative Transcript ("AT") 15, 19.  Plaintiff alleged she was unable to work due to multiple medical conditions, including ankylosing spondylitis and fibromyalgia.  AT 19. Following a hearing on July 7, 2017, an ALJ issued a decision dated February 6, 2018 finding plaintiff not disabled.  AT 15-23.

The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1.  The claimant last met the insured status requirements of the Social Security Act on June 30, 2017.
>
> 2.  The claimant did not engage in substantial gainful activity during the period from her alleged onset date of February 12, 2014 through her date last insured of June 30, 2017.
>
> 3.  Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the lumbar and lumbo-sacral spine, bilateral degenerative sacroiliitis, and seronegative aspondyloarthropathy, HLA-B27 positive.
>
> 4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, except she can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs.  The claimant can occasionally balance, stoop, kneel, crouch, and crawl.  She must be protected from hazards such as unprotected heights and dangerous moving mechanical parts.
>
> 6.  Through the date last insured, the claimant was capable of performing past relevant work as a mail clerk.  This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
> 7.  The claimant was not under a disability, as defined in the Social Security Act, at any time from February 12, 2014, the alleged onset date, through June 30, 2017, the date last insured.

AT 17-23.

---

has had a change in her medical condition with newly diagnosed impairments and a change in her residual functional capacity.  Therefore the presumption of continuing non-disability . . . no longer applies."  AT 16.

1       The ALJ made the following alternative findings for step five:

2

3   > Although the claimant is capable of performing past relevant work,
    > there are other jobs in the national economy that she is able to
    > perform. . . .

4

5   > The claimant was born on XX/XX/1974 and was 42 years old, which
    > is defined as a younger individual age 18-49, on the date last insured.
    > The claimant has had at least a high school education and is able to

6   > communicate in English.  Transferability of job skills is not material
    > to the determination of disability because using the Medical-

7   > Vocational Rules as a framework supports a finding that the claimant
    > is 'not disabled,' whether or not the claimant has transferable job

8   > skills.

9   > In the alternative, considering the claimant's age, education, work
    > experience, and residual functional capacity, there were other jobs

10  > that existed in significant numbers in the national economy that the
    > claimant also could have performed.

11

12  > . . .

13  > To determine the extent to which [the limitations in plaintiff's RFC]
    > erode the unskilled light occupational base, through the dated last

14  > insured, the [ALJ] asked the vocational expert whether jobs existed
    > in the national economy for an individual with the claimant's age,

15  > education, work experience, and residual functional capacity.  The
    > vocational expert testified that given all of these factors the

16  > individual would have been able to perform the requirements of
    > representative occupations such as cashier (211.462-010, light, SVP

17  > 2, 1.2 million jobs nationally), office helper (239.567-020, light, SVP
    > 2, 257,000 jobs nationally), and cleaner (323.687-014, light SVP 2,

18  > 974,000 jobs nationally. . . .

19  > Based on the testimony of the vocational expert, the undersigned
    > concludes that, through the date last insured, considering the

20  > claimant's age, education, work experience, and residual functional
    > capacity, the claimant was capable of making a successful

21  > adjustment to other work that existed in significant numbers in the
    > national economy.   A finding of 'not disabled' is therefore

22  > appropriate under the framework of the above-cited rule.

23  AT 22-23 (record citations omitted).

24  ISSUES PRESENTED

25      Plaintiff argues that the ALJ committed the following errors in finding plaintiff not

26  disabled:  (1) the ALJ improperly rejected the opinions of plaintiff's treating doctors; (2) the ALJ

27  improperly rejected plaintiff's testimony; and (3) the ALJ's step four and step five findings are

28

not supported by substantial evidence.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A.  Medical Opinions

Plaintiff asserts that the ALJ improperly discounted the opinions of her treating doctors, Dr. Phan and Dr. Hashimoto.

The weight given to medical opinions depends in part on whether they are proffered by

1    treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

2    1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a

3    greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80

4    F.3d 1273, 1285 (9th Cir. 1996).

5           To evaluate whether an ALJ properly rejected a medical opinion, in addition to

6    considering its source, the court considers whether (1) contradictory opinions are in the record;

7    and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

8    treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81

9    F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

10   rejected for "specific and legitimate" reasons.  Lester, 81 F.3d at 830.  While a treating

11   professional's opinion generally is accorded superior weight, if it is contradicted by a supported

12   examining professional's opinion (supported by different independent clinical findings), the ALJ

13   may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

14   Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give

15   weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d

16   1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion

17   rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional,

18   without other evidence, is insufficient to reject the opinion of a treating or examining

19   professional.  Lester, 81 F.3d at 831.

20        1.  Dr. Phan

21     Dr. Alex Phan began treating plaintiff for back pain in 2013.  AT 277.  On September 6, 2013,

22   he saw plaintiff for follow-up on pain, noting in part:

23            The last injection improved her pain by about 50%.  She is
              reasonably satisfied with the relief but her functional status is still
24            limiting in terms of picking up her 15-lb dog and cannot sit
              throughout an entire movie.
25
              She acquired an attorney and is in the process of applying for SSI.
26
              The average pain level is 5-6 over 10.
27
              Worsening factors include prolonged sitting, standing, and walking.
28            Improving factors include resting.  The pain medication improves the

5

1   pain 50% but causes sleepiness.

2   . . .

3   Lifting < 10 1bs, sitting < 4 hours with frequent break and standing
    less than 2 hours would be her limitation.
4

5   AT 268, 271.  Dr. Phan repeated these limitations on lifting, sitting, and standing in January 14,

6   2014 notes.  AT 274.

7   The alleged disability onset date was February 12, 2014.  In March 2014, Dr. Phan noted that

8   plaintiff was "reasonably happy with current relief, especially with right side" and recommended

9   jobs that did not require lifting more than 20 pounds. AT 292.

10  At a July 2014 exam, Dr. Pham noted that plaintiff had "left>right sided back pain with

11  radiation to the left posterior leg. Onset during pregnancy, first time 15 years ago."  AT 384.  He

12  noted that plaintiff was obese but had lost about 20 pounds over the past year.  AT 384.  He

13  further noted that she had an attorney and was "exploring SSI."  AT 384.  Under "Plan," Dr. Phan

14  wrote in part:

15  Continue to recommend jobs that require lifting less than 20 lbs

16  Continue walking dog daily

17  Continue current pain medications with PCP

18  Continue weight loss effort – doing very well

19  AT 384.

20  At a September 2014 appointment with Dr. Phan, plaintiff reported that she was "doing pretty

21  well until I walked all over campus with my son," which had resulted in a flare-up of pain.  AT

22  280.  "Pain is described aching stabbing with pain ranked at 6 out of 10. Worsening factors

23  include prolonged sitting and standing alleviating factors include rest.  Pain medication improves

24  the pain 50% with occasional drowsiness," Dr. Phan noted.  AT 280.  Dr. Phan continued to

25  recommend jobs that required lifting less than 20 pounds.  AT 283.

26  The ALJ did not treat Dr. Phan's examination notes as medical opinions to be adopted or

27  rejected.  Instead, her decision noted Dr. Phan's July 2014 assessment that "the claimant was

28  responding well to injections and treatment, and that she should be limited to lifting less than 20

6

1  pounds." AT 20, citing AT 384.  The ALJ also cited Dr. Phan's July 2014 opinion that treatment

2  was effective, in order to discount another doctor's opinion, discussed below.  AT 20.

3    Plaintiff asserts that the ALJ erred by rejecting certain of Dr. Phan's opinions without

4  providing reasons.  However, Dr. Phan's most limiting assessment – i.e., that plaintiff could lift

5  less than 10 pounds and sit less than four hours – took place before the alleged disability onset

6  date.  In contrast, his assessments during the relevant period consistently indicated that plaintiff

7  could do work that required lifting less than 20 pounds and that the treatments for her pain were

8  fairly effective.  On examination in July 2014, plaintiff's musculoskletal system was normal with

9  "no generalized joint pain, stiffness, weakness or muscle pain," and she was encouraged to keep

10  losing weight and walking the dog daily.  AT 382, 384.  Dr. Phan's 2014 treatment notes are not

11  inconsistent with an RFC for light work, which "involves lifting no more than 20 pounds at a

12  time," among other restrictions.  20 C.F.R. § 404.1527(b).  Because Dr. Phan's 2014 medical

13  assessments, even if credited as the opinions of a treating physician, appear to support the

14  determined RFC, plaintiff has not shown harmful error on this basis.

15    2.  Dr. Hashimoto

16    Plaintiff next asserts that the ALJ improperly discounted two opinions of Dr. Harvey

17  Hashimoto, another treating doctor.

18    In August 2015, Dr. Hashimoto filled out an Impairment Questionnaire in which he diagnosed

19  plaintiff with ankylosing spondylitis.[2]  AT 295.  He listed her primary symptoms as "pain in low

20  back over sacroiliac joints" and noted that she was being treated with sacroiliac injections and

21  physical therapy with "no long lasting relief from either."  AT 295.  Dr. Hashimoto opined that

22  plaintiff could sit for 2 hours total and stand or walk for 2 hours total in an 8-hour workday.  She

23  could occasionally lift up to 20 pounds and frequently use her hands for reaching, handling, and

24  fingering.  She would be expected to be absent from work more than 3 times a month as a result

25  of her impairments.  AT 296.  Dr. Hashimoto opined that these symptoms and limitations dated

26

27

28

---

[2] Ankylosing spondylitis is an inflammatory disease that, over time, can cause some of the small bones in the spine (vertebrae) to fuse.  Symptoms might include pain and stiffness in the lower back and hips, neck pain and fatigue. See https://www.mayoclinic.org/diseases-conditions/ankylosing-spondylitis/symptoms-causes/syc-20354808 (last visited August 12, 2020).

1    back to February 12, 2014, the alleged disability onset date.  AT 296.

2         In May 2017, Dr. Hashimoto completed another Disability Impairment Questionnaire,

3    diagnosing plaintiff with ankylosing spondylitis, hypertension, sacroiliitis[3], chronic insomnia, and

4    "fibromyalgia (per Rheumatology)."  AT 508.  Dr. Hashimoto listed her primary symptoms as

5    "pain and stiffness in back, hips, neck, pain and numbness in feet, hands, toes, and fingers,

6    trouble sleeping, and fatigue."  AT 508-509.  He noted that she "has moderate to severe pain on a

7    daily basis," precipitated or aggravated by sitting, standing, and walking.  AT 509.  She could sit

8    for 2 hours and stand or walk for less than one hour in an 8-hour workday, and needed breaks

9    every hour to change positions.  She could occasionally lift up to 10 pounds.  AT 510.  Her

10   symptoms would frequently interfere with her ability to pay attention and concentrate, and she

11   would need five unscheduled breaks throughout the workday.  AT 511.  She would be expected to

12   be absent more than three times a month as a result of her impairments.  AT 512.  As before, Dr.

13   Hashimoto opined that these symptoms and limitations related back to February 12, 2014.  AT

14   512.

15        The ALJ gave both of Dr. Hashimoto's opinions "little weight" for the following reasons:

16            There is no medical evidence of a diagnosis of fibromyalgia
             consistent with SSR 12-2p.  There are no nerve conduction studies
17            or other objective tests to support the manipulative limitations
             suggested in the first opinion, and the treatment record does not show
18            clinical findings to support the limitations suggested.  Further, the
             opinion forms have typed in the date that the limitations started as of
19            February 11, 2014, suggesting that the forms were partially
             completed by the claimant's representative rather than the date being
20            provided by the claimant's doctor.  It is also noted that the doctor
             gave very similar opinions as to limitations in the prior decision,
21            suggesting that regardless of the severity of the claimant's
             restrictions, they had not significantly changed in the prior four
22            years.

23   AT 21.

24        While rejecting Dr. Hashimoto's opinions, the ALJ partially credited the opinions of two

25   State agency medical consultants who reviewed plaintiff's records in 2015 and 2016 and opined

26   _____

27   [3] Sacroiliitis is an inflammation of one or both of the sacroiliac joints, situated where the lower
     spine and pelvis connect. Sacroiliitis can cause pain in the buttocks or lower back, and can extend
     down one or both legs.  See https://www.mayoclinic.org/diseases-
28   conditions/sacroiliitis/symptoms-causes/syc-20350747 (last visited August 12, 2020).

1   that plaintiff had "severe impairments of spine disorder and obesity."  AT 21, citing AT 77-86,

2   88-97.  Both concluded that the claimant could perform medium work with certain limitations.

3   Discussing these non-examining physicians' opinions, the ALJ wrote:

> The undersigned gives partial weight to these opinions.  They are
> substantially similar to the DDE opinions in the prior unfavorable
> decision, <u>but the medical evidence does show that the claimant's
> condition has progressed slightly since then,</u> supporting a light
> exertional capability with non-exertional limitations as described in
> the above residual functional capacity finding.  <u>It is significant that
> since the prior decision the claimant has been treated with Humira,</u>
> which both she and her rheumatologist agree is helping with her
> condition.

9   AT 21 (emphasis added).

10      The ALJ was required to provide specific and legitimate reasons, supported by substantial

11   evidence, for rejecting the 2015 and 2017 opinions of treating physician Dr. Hashimoto, both of

12   which concerned the alleged period of disability in plaintiff's current case.  The ALJ addressed

13   two aspects of Dr. Hashimoto's opinions with record evidence, stating there was no medical

14   evidence that plaintiff had been diagnosed with "<u>fibromyalgia</u> consistent with SSR 12-2p"[4] and

15   that no objective tests supported the <u>manipulative limitations</u> in the 2015 opinion.  (Emphasis

16   added.)  However, Dr. Hashimoto opined in 2015 that, due to ankylosing spondylitis alone,

17   plaintiff would not be able to sit, stand, or walk for a combined total of 8 hours in a workday and

18   would be absent more than three times a month.  In 2017, Dr. Hashimoto similarly opined that

19   plaintiff could not sit, stand, or walk for a combined total of 8 hours, would require five

20   unscheduled breaks a day, and would be absent more than three times a month.  These limitations

21   were based on primary symptoms including "pain and stiffness in back, hips, neck, pain and

22   numbness in feet."

23      The ALJ did not provide specific and legitimate reasons, supported by substantial

24   evidence, for rejecting several of Dr. Hashimoto's opined limitations in 2015 and 2017.  Rather,

25   the ALJ partially credited the opinions of the two non-examining physicians, revising their opined

26

27   [4] As Dr. Hashimoto's 2017 opinion noted, a rheumatologist diagnosed plaintiff with fibromyalgia.
     <u>See</u> AT 33-34 (hearing testimony).  Plaintiff notes that the records of this diagnosis are not part of
28   the case transcript.  ECF No. 9 at 10.

1   limitations based on her own assessment of the medical evidence.  See Banks v. Barnhart, 434 F.

2   Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own judgment for

3   competent medical opinion . . . and must not succumb to the temptation to play doctor and make .

4   . . independent medical findings.").  As to the disability onset date typed on the forms filled out

5   by Dr. Hashimoto, this has little bearing on the validity of his medical opinions as plaintiff's

6   treating doctor.  Similarly, the fact that Dr. Hashimoto "gave very similar opinions as to

7   limitations" in plaintiff's previously adjudicated disability claim is not a specific and legitimate

8   reason to discount his medical opinions in the instant case.

9       Because the ALJ did not supply adequate reasons to discount the opinions of plaintiff's

10  treating doctor, the resulting RFC is not based on substantial evidence, and plaintiff is entitled to

11  summary judgment.[5]

12  CONCLUSION

13      With error established, the court has the discretion to remand or reverse and award

14  benefits.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  A case may be remanded

15  under the "credit-as-true" rule for an award of benefits where:

16      (1) the record has been fully developed and further administrative
        proceedings would serve no useful purpose; (2) the ALJ has failed to
17      provide legally sufficient reasons for rejecting evidence, whether
        claimant testimony or medical opinion; and (3) if the improperly
18      discredited evidence were credited as true, the ALJ would be
        required to find the claimant disabled on remand.
19

20  Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014).  Even where all the conditions for the

21  "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when

22  the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within

23  the meaning of the Social Security Act."  Id. at 1021; see also Dominguez v. Colvin, 808 F.3d

24  403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative

25  proceedings would serve no useful purpose, it may not remand with a direction to provide

26  benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir.

27

28  _____
    [5] Accordingly, the undersigned does not reach the remaining claim.

10

1   2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the

2   proper approach is to remand the case to the agency.").

3          Here, the record as a whole creates serious doubt as to whether plaintiff was disabled

4   during the relevant period.  On remand, the ALJ is free to develop the record as needed, including

5   asking a vocational expert hypothetical questions about available jobs based on a revised RFC.

6   The court expresses no opinion regarding how the evidence should ultimately be weighed, and

7   any ambiguities or inconsistencies resolved, on remand.  The court also does not instruct the ALJ

8   to credit any particular opinion or testimony.  The ALJ may ultimately find plaintiff disabled

9   during the entirety of the relevant period; may find plaintiff eligible for some type of closed

10  period of disability benefits; or may find that plaintiff was never disabled during the relevant

11  period, provided that the ALJ's determination complies with applicable legal standards and is

12  supported by the record as a whole.

13         Thus, the undersigned recommends that this matter be remanded under sentence four of

14  42 U.S.C. § 405(g) for further administrative proceedings.

15         Accordingly, IT IS HEREBY ORDERED that:

16         1.  Plaintiff's motion for summary judgment (ECF No. 9) is granted;

17         2.  The Commissioner's cross-motion for summary judgment (ECF No. 13) is denied; and

18         3.  This matter is remanded for further proceedings consistent with this order.

19

20  Dated:  August 12, 2020

21                                                _____

22                                                CAROLYN K. DELANEY
                                                  UNITED STATES MAGISTRATE JUDGE

23

24

25

26  2/gutierriez0359.ssi.ckd

27

28

                                                11